In the Matter of Steven Franklin BURNEY, a minor.

In re the Matter of the Conservatorship and GUARDIANSHIP OF Steven Franklin BURNEY, a minor.

Appeal of Mildred HAINES and Clifford Haines.

No. 3–60543.

Supreme Court of Iowa.

Sept. 21, 1977.

Garold F. Heslinga, Oskaloosa, for appellants.

William J. Brandenburg, Des Moines, for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

This is a child custody dispute. Steven Franklin Burney, born out of wedlock to 17-year-old Robin M. Burney of Des Moines on December 12, 1974, was placed by the mother in the home of Mildred and Clifford Haines four days after his birth. Mildred Haines was the sister of a woman with whom Robin had resided. Upon Robin's petition Mildred was appointed guardian of Steven in May 1975. In early 1977 Robin asked that Steven be returned to her. When the Haines refused, Robin commenced this action seeking termination of the guardianship, after which the Haines separately petitioned the court to terminate her relationship with Steven. The actions were consolidated for trial. After trial the court terminated the guardianship and denied the Haines' petition to terminate Robin's parental rights. The Haines appeal from this decision, and we affirm.

Steven's natural father in known but has expressed no interest in the child, has contributed nothing toward his support, and is not involved in this proceeding. Robin ended her relationship with him several months before Steven's birth. After the birth she considered and rejected the notion of releasing Steven for adoption. Instead she accepted the suggestion of Mildred Haines' sister that she arrange to have the Haines care for the child on a temporary basis.

Some dispute exists regarding how long the Haines were to care for the child. They contend they were to have Steven for a month or two, until Robin became 18. They insist that her failure to claim his custody until almost two and one-half years later proves she abandoned him. Robin contends the Haines were to care for Steven until she became able to care for him. She denies she abandoned him.

The Haines live in Beacon, near Oskaloosa. Clifford, age 41, is a trucker. Mildred, age 42, is a homemaker. They have two grown sons. It is uncontroverted that they have taken excellent care of Steven, are deeply attached to him, and want to continue to raise him as their own child. For the first year of his life they did not represent themselves to him as his parents, but since then they have permitted him to believe they are his father and mother. He calls them "daddy" and "mommy".

Robin visited Steven in the Haines home and occasionally elsewhere an average of once or twice a month. She gave him toys and clothing and gave Mildred Haines money for his care when she was able to do so. Mildred said she received $300, which she put in a savings account for Steven. After placing Steven with the Haines, Robin held various jobs and studied to obtain a G.E.D. high school equivalency certificate. She received her certificate in 1976. In 1975 Robin moved into an apartment with Mark Tingwald, whom she married in February 1977. Mark has been regularly employed and shares Robin's desire to have Steven live with them.

In their brief the Haines argue Robin's claim to Steven rests solely on her relationship. They assert "She has no religion, no funds, no experience, questionable morality and a brand new marriage." They contrast this with the good home they have provided and offer Steven, and they emphasize the trauma of transferring his custody to Robin.

I. *The Haines' petition for termination of parental rights.* In asking that Robin's parental rights be terminated, the Haines allege three grounds. They contend Robin surrendered Steven, abandoned him, and substantially, continuously and repeatedly

neglected to meet her parental duties. Their action is brought under § 600A.5, The Code, and their allegations are made under § 600A.8.

It is clear Robin did not surrender Steven's custody to the Haines within the meaning of § 600A.8(1), because she did not sign a release of custody pursuant to § 600A.4.

It is also clear Robin did not abandon Steven within the meaning of § 600A.8 (3). Principles governing abandonment are discussed in *Doan Thi Hoang Anh v. Nelson*, 245 N.W.2d 511, 515–516 (Iowa 1976). Abandonment involves a giving up of parental rights and responsibilities accompanied by an intent to forego them. In this case Robin continuously manifested her desire to maintain her relationship with Steven and except for delay in asserting her parental rights did nothing to show an intention to abandon him. We do not find the delay in asserting her rights is alone sufficient to establish abandonment.

Furthermore we find the evidence falls far short of showing a substantial, continuous or repeated neglect of parental duties by Robin within the meaning of § 600A.8(4). It is ironic that her very act of obtaining excellent care for Steven by placing him with the Haines should now be turned against her as a manifestation of neglect of parental duty. Principles surrounding this ground of termination are discussed in *In Interest of Robbins*, 230 N.W.2d 489 (Iowa 1975), and *In Interest of Kester*, 228 N.W.2d 107 (Iowa 1975). Having them in mind, we agree with the trial court that the record does not show Robin's parental rights should be terminated on this basis. Instead it shows a reasonable effort by Robin, within her means and ability, to provide for Steven. That others, including the Haines, might have tried harder, done more, or tried alternatives short of a transfer of custody is not sufficient to establish this ground of termination.

Like the trial court, we find no merit in any of the grounds of termination relied on by the Haines.

II. *Robin's petition to terminate the guardianship.* Robin's custody claim is controlled by principles recently summarized in *In re Guardianship of Sams*, 256 N.W.2d 570, 573 (Iowa 1977):

Our cases have emphasized that parents should be encouraged in time of need to look for help in caring for their children without risking loss of custody. The presumption preferring parental custody is not overcome by a mere showing that such assistance was obtained. Nor is it overcome by showing that those who provided the assistance love the children and would provide them a good home. These circumstances are not alone sufficient to overcome the preference for parental custody.

Of course these circumstances are to be considered with other factors involved in determining whether the preference for parental custody has been overcome.

Economic and cultural advantages in the Haines home do not tip the balance in their favor. Courts are not free to take children from parents simply by deciding another home offers more advantages. See *In re Bennett v. Jeffreys*, 40 N.Y.2d 543, 387 N.Y.S.2d 821, 356 N.E.2d 277 (1976). Moreover, although we do not condone the fact Robin lived with Mark Tingwald almost two years before marrying him, we do not believe this should defeat her custody claim. Nor do we think she should be penalized for lack of parental experience. The most serious obstacle to her claim is the psychological trauma the transfer of custody may cause Steven. However, so far as the record discloses, he is emotionally healthy, knows Robin and Mark well, and has not been in the Haines custody so long that an extraordinary threat to his well-being is posed by the prospective transfer.

Although the decision is difficult, we agree with the trial court that Steven should be returned to his mother.

Unfortunately a custody dispute arises often when parents obtain help in caring for their children from others. Those who provide the assistance from motives of gen-

erosity develop an attachment to the children which makes them reluctant to relinquish custody. However, parents must be encouraged to seek help with their children in cases of hardship or necessity, and ordinarily the long-range best interests of children are better served when they are returned to their parents at the end of the temporary exigency. In these situations the love of the temporary custodians for the children should be directed toward minimizing the trauma of dislocation rather than used as a premise for acrimonious custody litigation. It is a paradox that children may become victims of too much love. We share the hope of the trial court that this fate will not befall Steven.

AFFIRMED.

HARRIS, J., dissents.