# IN THE COURT OF APPEALS OF IOWA

No. 17-0149
Filed June 21, 2017

**IN THE INTEREST OF M.J.W.,**
**Minor Child,**

**C.W., Father,**
    Appellant,

**B.G., Mother,**
    Appellee.
_____

Appeal from the Iowa District Court for Washington County, Crystal S. Cronk, District Associate Judge.

A father appeals an order terminating his parental rights pursuant to Iowa Code chapter 600A (2016). **AFFIRMED.**

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant father.

Katherine E.M. Lujan of Lloyd, McConnell, Davis & Lujan, L.L.P., Washington, for appellee mother.

Kathryn J. Salazar of Lamping, Schlegel & Salazar, L.L.P., Washington, guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

This is an appeal in a private action to terminate parental rights filed pursuant to Iowa Code chapter 600A (2016). The district court terminated Christopher's parental rights in his child M.J.W. pursuant to Iowa Code section 600A.8(3)(b) (abandonment) and 600A.8(4) (failure to provide financial support). Christopher timely filed this appeal.

I.

This court reviews de novo termination-of-parental-rights proceedings. *See In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). "Although our review is de novo, we do afford the decision of the district court deference for policy reasons." *State v. Snow*, No. 15-0929, 2016 WL 4801353, at *1 (Iowa Ct. App. Sept. 14, 2016). It is the petitioner's burden to prove each element of the case by clear and convincing evidence. *See* Iowa Code § 600A.8.

II.

Brandi, the mother and petitioner, and Christopher met and began a romantic relationship in 2003. In 2004, Brandi gave birth to their child M.J.W. Although Brandi was apprehensive of marrying Christopher due to his past use of controlled substances, they married in April 2005.

Their relationship quickly deteriorated. Brandi discovered Christopher using methamphetamine in the marital home in the immediate vicinity of M.J.W. Brandi took M.J.W. and moved out of the marital home the following day. The parties divorced in 2006. The parties were granted joint legal custody, Brandi was awarded physical care, and Christopher was awarded regular visitation to be

supervised by his mother. Christopher was ordered to pay $337.85 per month in child support.

From 2006 to 2008 Christopher maintained regular visitation with M.J.W. In 2008, Brandi moved to Illinois with her new paramour, Fred, to help care for Fred's ill father. Christopher continued to exercise visitation with M.J.W. every other weekend. In late 2008, Christopher left a voicemail message threatening Brandi, Fred, and M.J.W. Brandi obtained a protective order; however, the parties resumed visitation in 2009. In 2011, Christopher's visitation with M.J.W. became erratic. M.J.W. last saw Christopher in January 2013. During the visit, M.J.W. called Brandi and requested to come home because Christopher was not present and when he was present he was sleeping. Christopher being absent or sleeping during visitations occurred frequently during this time period, and M.J.W. spent much of her visitations with Christopher's mother.

Christopher was jailed in February 2013. After being released in March he called Brandi and assured her he would work harder at being a good father. He also spoke with M.J.W. The parties agree this is the last time Christopher spoke with M.J.W. Christopher was subsequently incarcerated from May 2013 until December 2014 when he was paroled. During his period of incarceration, Christopher made no attempt to contact Brandi or M.J.W. by mail or telephone, claiming he did not know the address or Brandi's phone number despite the fact Brandi's phone number has remained the same since 2008. According to Christopher, he asked his mother for Brandi's phone number, but she refused to share it.

In 2014, Brandi and M.J.W. moved from Illinois to Iowa. Brandi forwarded all mail from her Illinois address to her new home for one year, ensuring she and M.J.W. would receive any mail from Christopher. She received no mail from Christopher. Because Brandi was unaware of Christopher's location, she informed Christopher's mother of the move and her new address.

Upon his release from prison in late 2014, Christopher began work as a contractor. Christopher's child support obligation had been reduced to $30 per month as a result of his incarceration. He began paying child support again at the rate of $30 per month plus $6-8 per month in past due support. At the time of trial, Christopher was more than $18,000 behind in his child support obligation.

Upon his release from prison, Christopher made one attempt to contact Brandi via Facebook, but Brandi did not respond. Christopher testified he obtained Brandi's phone number from his mother or brother and made repeated calls to Brandi without any response. Brandi testified she never received any calls from Christopher.

Christopher was arrested in March 2016 on new charges and for violating his parole. He was found guilty of the new charges and incarcerated. He testified he will discharge his sentence in 2022, although he claims to be parole eligible in 2017.

### III.

### A.

Christopher challenges the sufficiency of the evidence he abandoned M.J.W. The Code provides a minor child is abandoned when:

> [A] parent, punitive father, custodian, or guardian rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

Iowa Code § 600A.2(19).  More specifically, because M.J.W. was older than six months at the time of the termination hearing, section 600A.3(8)(b) provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>
> > (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> > (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> > (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The statute does not require proof of the subjective intent to abandon the child.  *See* Iowa Code § 600A.8(3)(c).  Instead, the petition may establish objective intent by showing the respondent failed to partake in "affirmative parenting to the extent it is practical and feasible in the circumstances."  *In re Goettsche*, 311 N.W.2d 104, 106 (Iowa 1981).

There is clear and convincing evidence Christopher failed to have substantial and continuous contact with the child within the meaning of the statute.  He has not had any visitation with the child since January 2013 and has

had no communication with the child since the spring of 2013. There is no evidence Christopher was physically or financially unable to have communication with the child.

Christopher's incarceration does not excuse his lack of contact and communication with M.J.W. Christopher was incarcerated from May 2013 through December 2014 and again in March 2016 through the time of trial. He never attempted to arrange visitation with the child while incarcerated. Christopher admitted he had money in his prison account but did not attempt to make a phone call or send a letter of M.J.W. A parent cannot "use his incarceration as a justification for his lack of relationship with [the child]." *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993).

Christopher argues Brandi prevented him from having contact with the child. *See* Iowa Code § 600A.8(3)(b). The record does not support Christopher's argument. Brandi has maintained the same phone number, which was known to Christopher, since 2008. When Brandi moved from Illinois to Iowa, she forwarded her mail for one year. She received no mail from Christopher. Brandi also notified Christopher's mother of her change of address. The parties had contrary testimony regarding Christopher's attempts to call Brandi. Christopher testified he left numerous unreturned voice mail messages with Brandi after his first period of incarceration. Brandi testified she received no messages from Christopher. The district court concluded Brandi's testimony was more credible on this point. We defer to the district court's determination of witness credibility. *See In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). There was one occasion when Brandi admittedly did not respond to a Facebook

message Christopher sent to Brandi. This single instance is insufficient to show Brandi prevented Christopher from seeing M.J.W. within the meaning of the statute. Quite simply, being a parent requires more than "firing text messages and Facebook messages into the electronic ether" and awaiting response. *In re B.B.E.*, No. 15-0930, 2016 WL 541346, at *3 (Iowa Ct. App. Feb. 10, 2016).

B.

Christopher also challenges the sufficiency of the evidence he failed to satisfy his child support obligation without good cause. A parent's parental rights may be terminated when the "parent has been ordered to contribute to the support of the child . . . and has failed to do so without good cause." Iowa Code § 600A.8(4). "A substantial, and not merely sporadic or insignificant, failure to pay ordered support without good cause justifies termination of parental rights under section 600A.8(4)." *Klobnock v. Abbott,* 303 N.W.2d 149, 152 (Iowa 1981).

> If there has been a showing of a substantial failure to pay, the court must then consider whether that failure was without good cause. [*In re*] *B.L.A.,* 357 N.W.2d [20,] 21 [(Iowa 1981)]. In considering whether there is good cause for failure to pay child support, the key factual issue is the parent's ability to pay. *Id.* at 22. A "parent's intent is clearly tied to an ability to pay." [*In re*] *D.E.E.,* 472 N.W.2d [628,] 630 [(Iowa Ct. App. 1991)].

*In re K.N.B.*, No. 11-1061, 2012 WL 1246524, at *3 (Iowa Ct. App. Apr. 11, 2012).

There is clear and convincing evidence establishing this ground for termination of Christopher's parental rights. At the time of trial, Christopher was more than $18,000 behind in his support obligation.

Christopher contends his failure to pay was for good cause. Specifically, Christopher notes he was incarcerated for some of the time period and, upon release, he paid $30 per month plus an additional amount for back support. While this is true, Christopher fails to address the period between March 2010 and May 2013 when he was not incarcerated and made no support payments. Christopher testified he was not working during this time due to stress. However, he also conceded there were times when he could have worked but chose not to do so. His deliberate decision to forgo work was a deliberate decision to not support his own child. It does not amount to good cause. *See id.* (noting a mother's choice to take lower paying jobs than she could obtain showed she had the ability to pay). We also note the contributions Christopher did make resulted from wage garnishments and withholding tax refunds, not voluntary payments. *See id.* at *4.

## C.

Brandi argues Christopher's parental rights should also be terminated pursuant to Iowa Code section 600A.8(9) because he is imprisoned and it is unlikely he will be released within five years. Because we have affirmed the termination of Christopher's parental rights on other grounds, we decline to address the issue.

## D.

We next address whether Brandi established termination of Christopher's parental rights is in the best interests of the child. *See* Iowa Code § 600A.1; *In re R.K.B.,* 572 N.W.2d 600, 602 (Iowa 1998).

Kathryn Salazar was appointed as guardian ad litem (GAL) for M.J.W. in this proceeding. While meeting with Salazar, M.J.W. recalled witnessing Christopher use drugs and was able to give a detailed account of the process. M.J.W. also said Christopher shot a gun in the home and told her if she shot a gun he would get her a puppy. She shot the gun and Christopher got her a puppy but later gave it away. M.J.W. confided in Salazar that she did not feel safe while in Christopher's care. Salazar's report noted M.J.W.'s strong bond with Brandi and her husband. She reported M.J.W. is a generally happy child— her disposition only changing while discussing Christopher. Salazar's report concluded termination was in M.J.W.'s best interests.

We agree termination of Christopher's rights is in the best interests of the child. The child is thriving in her current environment under the care of her mother and stepfather. Brandi has significant medical issues and, as a result, is rightfully concerned about M.J.W.'s welfare in the event Brandi were to decease while M.J.W. was still a minor. The stepfather seeks to adopt the child to provide continuity and certainty in this regard. *See In re M.D.*, No. 06-1564, 2007 WL 911902, at *4 (Iowa Ct. App. Mar. 28, 2007) (considering stepparent's strong bond with the child and desire to adopt the child when determining termination was in the child's best interest); *In re C.M.H.*, No. 05-0930, 2005 WL 2990650, at *2 (Iowa Ct. App. Nov. 9, 2005) (noting the importance of stability and consistency in the child's life when determining what is in the child's best interests).

In contrast, the termination of Christopher's parental rights would not cause any great detriment to the child. Christopher has not had any contact with

the child for more than four years. He has not voluntarily provided any financial support to the child. He has involuntarily provided nominal support for the child. The child has negative associations when thinking of her father, including his drug use, his decision to coerce or bribe her into firing a weapon, and his taking her pets. She does not feel safe around the father and does not trust him. *See In re S.A.B.*, No. 13-1718, 2014 WL 2885322, at *3 (Iowa Ct. App. June 25, 2014) (giving primary consideration to the child's safety when determining best interests). In addition, Christopher has chosen a life of crime rather than fatherhood. There is clear and convincing evidence the termination of Christopher's parental rights is in the best interests of the child.

IV.

On de novo review, we conclude the mother proved by clear and convincing evidence the statutory grounds authorizing the termination of the father's parental rights and the termination of the father's parental rights is in the best interests of the child. We affirm the judgment of the district court.

**AFFIRMED.**