In the Interest of Darrin Paul GOETTSCHE and Drew Thomas Goettsche, Children.

Appeal of Henry GOETTSCHE.

No. 65657.

Supreme Court of Iowa.

Oct. 21, 1981.

Dale E. Ruigh of Smith, Nutty, Sharp, Ruigh & Benson, Ames, for appellant.

S. A. Holm of Pasley, Singer, Pasley, Holm & Thomas, Ames, for petitioner-appellee Pamela Pohar.

William J. Pattinson, of Hegland, Newbrough, Johnson, Brewer & Maddux, Ames, guardian ad litem for the children.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, ALLBEE and LARSON, JJ.

McCORMICK, Justice.

The question in this appeal is whether the trial court erred in terminating the parent-child relationship between Henry Goettsche and his sons Darrin and Drew. The action was brought by Pamela Pohar, mother of the children, under chapter 600A, The Code. The relationship was terminated on the ground of abandonment under section 600A.8(3). We affirm the trial court.

In relevant part, section 600A.8 provides:

The juvenile court shall base its findings and order [terminating parental rights] on clear and convincing proof. The following shall be, either separately or jointly, grounds for ordering termination of parental rights:

. . . .

3. A parent has abandoned the child.

4. A parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause.

Abandonment is defined in section 600A.2(16):

"*To abandon a minor child*" means to permanently relinquish or surrender, without reference to any particular person, the parental rights, duties, or privileges inherent in the parent-child relationship. The term includes both the intention to abandon and the acts by which the intention is evidenced. The term does not require that the relinquishment or surrender be over any particular period of time.

Section 600A.1 states that the provisions of chapter 600A are to be construed liberally. The welfare of the child is to be the paramount consideration.

This appeal requires construction and application of the abandonment ground. We do not reach Pamela's contentions involving the constitutionality, construction and application of the separate ground in section 600A.8(4) authorizing termination for nonpayment of child support. *See Klobnock v. Abbott*, 303 N.W.2d 149 (Iowa 1981).

I. *Construction of the statute.* Henry raises three issues concerning the meaning of abandonment. First, he asserts it requires proof of "total desertion." Second, he alleges nonpayment of child support cannot be considered as evidence of abandonment. Finally, he contends abandonment can be found only when the parent has left the child on a doorstep or similarly left its welfare wholly to chance or fate.

■ The assertion that the statute requires total desertion before abandonment can be found does not bear scrutiny. Henry cites *Pitzenberger v. Schnack*, 215 Iowa 466, 245 N.W. 713 (1932), in support of his position. The court in that case cited with approval a definition of abandonment from Words and Phrases which included the term "total desertion." However, as Henry separately acknowledges in his brief, the present statutory definition is controlling here. *See* § 600A.2(16). That definition, which is different from the one quoted in *Pitzenberger*, does not require total desertion. We also note that the *Pitzenberger* decision was based on the failure of proof on the intent issue rather than on the desertion concept. *See* 215 Iowa at 470, 245 N.W. at 715.

■ We also find no merit in the second issue raised by Henry. His theory is that because nonpayment of child support is a separate ground for termination, considering the same evidence as proof of abandon-

ment would make the separate ground superfluous. This argument has significance because he persuaded the trial court that the ground authorizing termination for non-support is unconstitutional. Moreover, the court's finding of abandonment rested in part on a finding of an unjustified substantial failure to pay court-ordered support.

We have recognized, however, that abnegation of court-ordered financial responsibility is relevant evidence of indifference to the child involved. It is "the equivalent of abandonment." *In Interest of Kelley*, 262 N.W.2d 781, 785 (Iowa 1978). Moreover, in requiring the statute to be construed liberally and in authorizing the termination grounds to be considered "either separately or jointly," the legislature plainly did not intend to preclude consideration of evidence relevant to one ground simply because it might also be relevant to another ground. Because the grounds overlap, the evidence may overlap as well. Certainly in some cases a failure to pay support may not be sufficient to warrant termination solely on that basis. Nonetheless the evidence might well be sufficient with other evidence to prove abandonment. We refuse to take the artificial and unrealistic view of the statute which Henry advocates.

■ His final statutory construction issue relates to the section 600A.2(16) language making the required permanent relinquishment or surrender of the child "without reference to any particular person." Henry contends this means a child left with a specific person can never be found to be abandoned. This concept is expressed in an older Utah case, *Jensen v. Earley*, 63 Utah 604, 612, 228 P. 217, 220 (1924), *overruled on other grounds, Walton v. Coffman*, 110 Utah 1, 169 P.2d 97 (1946). It has not been followed in later Utah cases. *E. g., Re Adoption of Guzman*, 586 P.2d 418 (Utah 1978) (mother found to have abandoned child in custody of her former husband). It has also been rejected in other jurisdictions. *E. g., Petition of C. E. H.*, 391 A.2d 1370, 1373 (D.C.App.1978); *In re Adoption of Maxwell*, 4 N.Y.2d 429, 176 N.Y.S.2d 281, 151 N.E.2d 848 (1958).

We do not think our legislature intended to limit terminations based on abandonment in the way Henry suggests. Rather, we think the legislature intended that the relinquishment or surrender must not be a situation where the parent has merely turned to a particular person for help in caring for the child in a time of need. Circumstances of this kind are illustrated and discussed in *Matter of Burney*, 259 N.W.2d 322 (Iowa 1977).

■ We characterized abandonment in *Burney* as "a giving up of parental rights and responsibilities accompanied by an intent to forego them." *Id.* at 324. We think this characterization captures the two elements necessary for abandonment as the term is defined in section 600A.2(16). The giving up of parental rights and responsibilities refers to conduct. The intent element relates to the accompanying state of mind.

■ Moreover, parental responsibilities include more than subjectively maintaining an interest in a child. The concept requires affirmative parenting to the extent it is practical and feasible in the circumstances. *See In re J. L. Z.*, 492 Pa. 7, 421 A.2d 1064, 1064–65 (1980) ("This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. . . . Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life."); *see also* Placey, *Effect of the Adoption Act of 1970 on Termination of Parental Rights*, 81 Dickinson L.Rev. 709 (1977).

■ II. *Proof in this case.* Our review of the record is de novo. *Klobnock*, 303 N.W.2d at 150.

■ Henry and Pamela were married in 1961. The marriage was dissolved in January 1976. Pamela received custody of Drew, who is now 12, and Darrin, now 10. Henry was ordered to pay $100 per month per child as support and was given visitation "at reasonable times and places."

Both parents have resided in Ames since the dissolution. Henry has always had a good job with sufficient income to make the support payments. Pamela has remarried and her present husband wishes to adopt her sons if Henry's parental rights are terminated. Henry has lived for several years with a woman and two of her children.

After the divorce Henry seldom visited the children, and following a visit in December 1976 stopped visiting them altogether. His only visitation since then was in June 1980, after the present action was started. He did not call the children on the telephone or write them although he did usually send them birthday and Christmas cards with small cash gifts. He attended no school conferences and did not inquire about their academic progress until after this action commenced. Even when he saw the boys at a little league baseball game, he did not speak to them.

Henry paid child support until October 1977. He made no further payments until December 1978. At that time he paid $2800 to bring the payments current. However, he then defaulted in payments until May 1980, after this action was brought, when he paid $200. He made another $200 payment in June 1980. He asserted he did not make the payments because the Internal Revenue Service refused to permit him to claim the boys as dependents.

The boys are beneficiaries of a testamentary trust under Henry's will and are also beneficiaries of a life insurance policy on his life.

In denying he intended to abandon his sons, Henry sought to explain his failure to visit them as a means of avoiding friction with Pamela which might adversely affect them. He conceded she had been fully cooperative when he had exercised visitation. Besides using his dispute with the IRS as the reason for his failure to pay child support, he pointed out that Pamela had made no effort to collect it.

We believe this kind of case is among those the legislature had in mind when it provided for termination of parental rights on the abandonment ground. Not only did Henry relinquish parental rights and privileges, he also abdicated parental duties. By failing to maintain meaningful communication and association with his sons, he failed to engage in the active parenting which the parent-child relationship requires. Tragically he became a stranger to his own children. His otherwise laudable conduct in making provisions for the children after his death does nothing to bridge the gulf created by his failure to act as a parent.

Although Henry denies he intended to abandon the children, we believe the evidence is clear and convincing that he intended to relinquish parental rights, privileges and duties. This is the intent which the abandonment definition specifies.

This case is analogous to those in which other courts have found abandonment. *See, e. g., Claunch v. Entrekin,* 272 Ala. 35, 128 So.2d 100 (1961); *Re Adoption of Layton,* 196 So.2d 784 (Fla.App.1967) *overruled on other grounds, Re Adoption of Cottrill,* 388 So.2d 302 (Fla.App.1980); *Re Adoption of Fuller,* 544 S.W.2d 345 (Mo.App.1976); *Z v. M. E. T.,* 575 S.W.2d 243 (Mo.App.1978); *Re Carson,* 76 Nev. 446, 357 P.2d 591 (1960); *B v. B,* 53 App.Div.2d 160, 385 N.Y.S.2d 821 (1976); *Re Adoption of Jacono,* 426 Pa. 98, 231 A.2d 295 (1967); *Re Adoption of Christofferson,* 89 S.D. 287, 232 N.W.2d 832 (1975); *Re Adoption of Guzman,* 586 P.2d 418 (Utah 1978); *Re Adoption of Gargan,* 21 Wash.App. 423, 587 P.2d 545 (1978); *Adoption of Webb,* 14 Wash.App. 651, 544 P.2d 130 (1975).

We find the abandonment ground was established by clear and convincing evidence in the present case. The trial court was right in terminating parental rights on that basis.

AFFIRMED.