**In the Interest of S.K.C., A Child.**

**Appeal of L.F.W., Natural Father.**

**No. 88–1162.**

Court of Appeals of Iowa.

Nov. 29, 1988.

Steven J. Holwerda of Selby, Updegraff, Smith & Holwerda, Newton, for appellant father and appellee child.

Thomas J. Miller, Atty. Gen., Charles K. Phillips, Asst. Atty. Gen., and Cliff Wendel, Asst. Jasper Co. Atty., for appellee State.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

The father of a child appeals from a juvenile court order terminating his parental rights. He challenges the sufficiency of the evidence to establish that he had abandoned the child. He also contends the evidence established that he had the intent to resume his parental obligations and that termination of his parental rights would be harmful to the child. Finally, he contends the juvenile court erred by failing to consider certain deposition testimony.

The child in question is a girl born in December 1981. She resided with her mother and four half-siblings until March 1985, at which time all five children were placed in foster care due to the mother's mental illness and consequent parenting de-

ficiencies. The children have remained in foster care since that time. Eventually the mother's parental rights were terminated with respect to all five children; in November 1987, the Iowa Supreme Court upheld the termination of the mother's parental rights. *In Interest of A.C.*, 415 N.W.2d 609 (Iowa 1987), U.S. *cert. denied* — U.S. ——, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988).

The termination proceeding involving the mother did not deal with any of the fathers of the five children. The supreme court's November 1987 opinion remanded the case and directed the State to seek jurisdiction over the various natural fathers in order to determine their fitness to serve as custodial parents.

Shortly thereafter, the State filed the present petition seeking to terminate the parental rights of the appellant L.F.W., father of the child in question here. Evidence at the termination hearing disclosed that L.F.W. has never had custody of his daughter, has never provided support for her, and has had no contact at all with her since she was eight months old. He blames his lack of contact on the mother, whom he accuses of hiding the child and forbidding contact. After the hearing, the juvenile court terminated L.F.W.'s parental rights on the ground of abandonment. L.F.W. has appealed the termination order.

The trial court ordered L.F.W.'s rights terminated pursuant to Iowa Code section 232.116(1)(b) (Supp.1987), which provides:

[T]he court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:

b. The court finds that there is clear and convincing evidence that the child has been abandoned.

*Id.*

"Abandonment of a child" means the permanent relinquishment or surrender, without reference to any particular person, of the parental rights, duties, or privileges inherent in the parent-child relationship. Proof of abandonment must include both the intention to abandon and the acts by which the intention is evidenced.

Iowa Code § 232.2(1).

There are two elements necessary for abandonment. The giving up of parental rights and responsibilities refers to the party's conduct. The intent to forego parental rights and responsibilities is the accompanying state of mind. *In Interest of Goettsche*, 311 N.W.2d 104, 106 (Iowa 1981). Parental responsibilities include more than subjectively maintaining an interest in a child. Affirmative parenting is required to the extent it is practical and feasible. *Id.* The affirmative duty requires a continuing interest in the child and a genuine effort to maintain communication and association with the child. *Id.* (quoting with approval *In re J.L.Z.*, 492 Pa. 7, 421 A.2d 1064, 1064–65 (1980)).

Our review of this case is de novo. Iowa R.App.P. 4. We review the facts as well as the law. *Long v. Long*, 255 N.W.2d 140, 143 (Iowa 1977). We review all of the evidence. Any error that might have occurred by the trial court's alleged failure to review deposition testimony will be corrected upon our de novo review. We give weight to the fact findings of the trial court, especially when considering the credibility of the witnesses. Iowa R.App.P. 14(f)(7).

There is clear and convincing evidence that L.F.W. abandoned his daughter, S.K.C. L.F.W. has never had custody of S.K.C. since her birth on December 5, 1981. He maintained contact with her during a few months of her infancy, but then was meaningfully absent from her life for five years. L.F.W. testified that he was concerned for S.K.C.'s safety in her mother's care, but allowed her to remain anyway. L.F.W. never provided monetary support for his child although he did provide food, clothing, and toys during the first few months. L.F.W. failed to complete the procedures necessary for S.K.C. to receive social security benefits for which she was eligible in January of 1983.

In 1985, L.F.W. received notice of the child in need of assistance proceedings and was aware of the removal of the children

from the mother's home. He also received notice of the termination proceedings against the mother in September of 1986. He knew the foster parents wanted to adopt all five children.

L.F.W. contacted the foster family twice. The second phone call was prompted by the children's story being told on the television show Sixty Minutes. Thereafter, the Department of Human Services was contacted and visitation with S.K.C. began in November of 1987. L.F.W. claims to have established a relationship with S.K.C. through personal visits, phone calls, cards, letters, and gifts. However, personal contact between the two has been for a total of nine hours.

L.F.W. made no genuine effort to maintain communication and association with his daughter for over five years. The recent efforts have only occurred because of the publicity surrounding the fate of the five children. L.F.W.'s conduct clearly shows the giving up of parental rights and responsibilities.

In denying that he had the requisite intent to abandon S.K.C., L.F.W. has provided several explanations for his conduct. He moved away from S.K.C. because of a conflict with the mother. The mother then moved and L.F.W. did not know the whereabouts of his daughter. When L.F.W. finally found S.K.C., he was a full-time student living on disability income and could not financially support his daughter.

We do not believe these explanations are sufficient to overcome the clear and convincing evidence that L.F.W. intended to relinquish his parental rights, privileges, and duties when he left S.K.C. as an infant with her mother. His recent efforts do not change the fact that he abdicated his parental duties and failed to engage in active parenting which the parent-child relationship requires.

We also find that terminating L.F.W.'s parental rights furthers the best interests of S.K.C. *See In Interest of Dameron,* 306 N.W.2d 743, 745 (Iowa 1981); Iowa Code § 232.1. The evidence reveals that the five children need to remain together and need permanent placement. This is only possible through termination of L.F.W.'s parental rights. Clear and convincing evidence indicates that in the long run, S.K.C.'s best interests will be served by allowing her to remain with her siblings and permanently severing the relationship with L.F.W.

AFFIRMED.