**IN THE COURT OF APPEALS OF IOWA**

No. 14-0674
Filed October 1, 2014

**IN THE INTEREST OF P.N.,**
**Minor Child,**

**M.L. and C.L.,**
**Petitioners/Appellees,**

**B.N., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.


A father appeals the termination of his parental rights pursuant to Iowa Code section 600A.8(3)(b) and (9) (2013). **AFFIRMED.**


Sarah E. Stork Meyer of Clemens, Walters, Conlon & Meyer, L.L.P., Dubuque, for appellant father.

Robert E. Sabers of Robert E. Sabers, P.C., Dubuque, for appellees.

Bradley T. Boffeli of Boffeli & Spannagel, P.C., Dubuque, attorney and guardian ad litem for minor child.


Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**POTTERFIELD, P.J.**

A father appeals the termination of his parental rights pursuant to Iowa Code section 600A.8(3)(b) and (9) (2013). Because clear and convincing evidence supports both grounds and termination is in the child's best interests, we affirm.

*I. Scope and Standard of Review.*

We review termination proceedings under chapter 600A de novo. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We give weight to the factual findings of the juvenile court, especially those regarding witness credibility, but we are not bound by them. *Id.* "The paramount concern in termination proceedings is the best interest of the child." *Id.* (citing Iowa Code § 600A.1 and *In re P.L.,* 778 N.W.2d 33, 39 (Iowa 2010) (holding best interests are to be determined within statutory framework)).

*II. Background Facts.*

P.N. was born in July 2008. He lived with his parents and paternal grandparents for a time. However, in 2009, a search pursuant to a warrant found the father in possession of drugs. A child abuse assessment at that time was founded because the father had cared for the child while under the influence of methamphetamine.

In March 2011, the father was sentenced on drug charges to consecutive terms of imprisonment not to exceed twenty-five years.

The mother and child began to live with the child's maternal grandparents in July 2011. The child remains living with them, though the mother does not.

On June 25, 2012, an order approving the mother's and father's stipulation was filed, placing the child in the mother's sole legal custody and physical care (though the maternal grandparents were caring for the child), allowing the father to telephone the child every other weekend, and suspending his support obligation until he was released from incarceration. The order further provided the district court would retain jurisdiction, and the father could seek visitation when released from prison by filing a motion with the court.

In August 2012, the maternal grandparents, as custodians,[1] filed a petition to terminate the father's parental rights pursuant to Iowa Code section 600A.8(3)(b) (abandonment).[2]

---

[1] *See* Iowa Code §§ 600A.5(b) (allowing custodians to file a termination petition), 600A.2(6) (defining custodian).

[2] The provision states, in part:

> The following shall be, either separately or jointly, grounds for ordering termination of parental rights:
>
> . . . .
>
> 3. The parent has abandoned the child. For the purposes of this subsection, a parent is deemed to have abandoned a child as follows:
>
> . . . .
>
> b. If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8.

While serving his prison sentence, the father would telephone and write to the child on occasion. In a letter dated September 25, 2012, the father wrote, "Daddy will be home soon and this nightmare will be over. I am so sorry for leaving you and it will never happen again. I promise." In October 2012, he wrote, "I promise never to leave you like this again." However, his actions spoke louder than his written words.

The father was released on parole on November 5, 2012. The parties had agreed the termination would be tabled and a guardianship would be opened. However, the father did not seek any visits with his child upon release from prison. He did not write or call[3] before he was again incarcerated in January 2013.

On October 31, 2013, he pled guilty to three counts of third-degree burglary[4] (two committed on November 6, 2012—the day after his release on parole—and one committed on December 27). He was sentenced to three concurrent five-year terms of imprisonment, to be served consecutively to the time remaining on his sentence which was the subject of his parole revocation. His tentative discharge date is May 6, 2024.

On January 15, 2014, the grandparents filed an amended petition for termination of the father's parental rights, adding the allegation the father was imprisoned and "it is unlikely that he will be released from prison for a period of five years or more." *See* Iowa Code § 600A.8(9).

---

[3] The father did testify he talked to the child one time "around Thanksgiving."
[4] The plea agreement reduced one charge from second-degree burglary and allowed the father to avoid being sentenced as a habitual offender.

The trial on the petition to terminate the father's parental rights was held on February 4 and March 20, 2014.[5] The evidence presented established the father has a long history of drug use and criminal convictions dating back to 2001. The child's guardian ad litem informed the court that he had spoken with the father's parole officer, who indicated "it was very unlikely that [the father] was going to be released within five years of his pending incarceration." Further evidence showed the father has never provided economic support for the child— even before the June 2012 stipulated order suspended support. The father testified he was never ordered to pay support for his child. He stated his child "is the most important thing in the world to me." He testified, "I was a hell of a dad. I might have been a drug addict, but I was a damn good dad." The father insists he has not abandoned his child and he intends to parent the child when he is released. The juvenile court terminated the father's parental rights pursuant to Iowa Code section 600A.8(3)(b) and (9). The father now appeals.

There is clear and convincing evidence to support both grounds for termination here. *See C.A.V.*, 787 N.W.2d at 100. Under section 600A.8(3)(b) as pertinent here, if a child is six months of age or older, a parent is deemed to have abandoned a child "unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward the support of the child of a reasonable amount, according to the parent's means" and in communicating on a regular basis with the child or with the person having the care or custody of the child.

---

[5] The child's mother consented to the termination of her parental rights.

> The phrase "to abandon a minor child" is defined in section 600A.2(19) to mean that a parent rejects the duties imposed by the parent-child relationship and makes no provision or only a marginal effort to provide for the support of the child or to communicate with the child. Abandonment is characterized as the "giving up of parental rights and responsibilities accompanied by an intent to forego them." *In re Burney*, 259 N.W.2d 322, 324 (Iowa 1977). Two elements are necessary to show abandonment: the conduct of the parent in giving up parental rights and responsibilities and the parent's intent to do so. *In re Goettsche*, 311 N.W.2d 104, 106 (Iowa 1981). A parent may evince an intent to abandon the child even though the parent subjectively maintains an interest in the child if that interest is not accompanied by "affirmative parenting to the extent practical and feasible in the circumstances." *Id.*

*C.A.V.*, 787 N.W.2d at 101. The father's subjective statements of his interest in parenting his child are contradicted by his actions. Prior to being released on parole, the father did occasionally call and write to his child. But the father was released on parole on November 5, 2012, and did not see his child or request visitation. Rather, he engaged in criminal conduct that again resulted in his incarceration.[6] During 2013, the father was again incarcerated, having failed to take advantage of his brief freedom to renew his relationship with his son, provide for his support, or otherwise attempt to parent the boy, he did not maintain "regular" contact with his child. Nor has he provided any economic support in any amount. The father thus has failed to engage in "affirmative parenting to the extent practical and feasible in the circumstances." *Id.*; *see also In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993) ("We do not hold or suggest that termination is a necessary result of conviction of a crime and resulting imprisonment. On the other hand [the father] cannot use his incarceration as a justification for his lack of relationship with the child. This is especially true when

---

[6] At the termination trial, the father testified he had not committed to the offenses to which he pled guilty.

the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with a child.").

The evidence also establishes the father "has been imprisoned and it is unlikely that the parent will be released from prison for a period of five or more years," which supports termination under Iowa Code section 600A.8(9). *See In re A.H.B.*, 791 N.W.2d 687, 689-90 (Iowa 2010) (discussing the two prongs of the provision).

"Once the court has found a statutory ground for termination under a chapter 600A termination, the court must further determine whether the termination is in the best interest of the child." *Id.* at 690. We agree with the district court's determination that termination of the father's parental rights is in the best interests of P.N. The child is in a caring home. His grandparents have provided the child stability and offer him the permanence of adoption. He has not seen his father for three years. We therefore affirm the termination of the father's parental rights.

**AFFIRMED.**