# IN THE COURT OF APPEALS OF IOWA

No. 20-0036
Filed April 1, 2020

**IN THE INTEREST OF I.J. and M.J.,**
**Minor Children,**

**C.J., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Mark Fowler, Judge.


A father appeals the termination of his parental rights. **AFFIRMED.**


J. David Zimmerman, Clinton, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Brian P. Donnelly of Mayer, Lonergan & Rolfes, Clinton, attorney and guardian ad litem for minor children.


Considered by Greer, P.J., Ahlers, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

A father appeals from the termination of his parental rights to his children, I.J. and M.J.[1]  On appeal, he challenges the statutory grounds authorizing termination and argues termination is not in the children's best interests due to the strength of his bond with the children.  We affirm.

**I. Scope and Standard of Review**

We review termination proceedings de novo.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  "We give weight to the factual determinations of the juvenile court but we are not bound by them.  Grounds for termination must be proven by clear and convincing evidence.  Our primary concern is the best interests of the child[ren]."  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  First, we determine whether a ground for termination under section 232.116(1) has been established.  *See id.* at 472–73.  If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights."  *Id.* at 473 (citation omitted).  Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."  *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

---

[1] The juvenile court also terminated the mother's parental rights.  She does not appeal.

## II. Discussion

### A. Statutory Grounds

The father challenges the statutory grounds authorizing termination. The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(f) and (h) (2019). The juvenile court applied paragraph (f) to I.J. and paragraph (h) to M.J. Paragraph (h) applies to children ages three and younger while paragraph (f) applies to children ages four and older.

At the time of the termination hearing, I.J. was three years old. But I.J. turned four during the time in between the termination hearing and issuance of the termination order. Because the State had to establish the statutory grounds for termination at the termination hearing,[2] when I.J. was still three years old, the juvenile court should have considered termination of the father's rights with respect to I.J. under paragraph (h) instead of paragraph (f).

But the father does not take issue with this problem. And the State petitioned for termination of the father's rights with respect to I.J. under both paragraphs (h) and (f). Because we may affirm on any grounds alleged in the termination petition, we will consider grounds for termination under paragraph (h) for both children. *See M.W.*, 876 N.W.2d, at 221–22.

Iowa Code section 232.116(1)(h) authorizes termination of a parent's parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

---

[2] *Cf. In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (providing that the juvenile court considers whether a child can be returned to the parent at the time of the termination hearing not at the time of the termination order).

>    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father only challenges the last element, whether the children could be returned to his care. We find the children could not be returned to his care.

This family came to the attention of the Iowa Department of Human Services (DHS) due to concerns of domestic abuse and substance abuse in the home. So the children were informally placed with the maternal grandparents. But the children were formally removed from the parents' care through an ex parte order after the parents absconded with I.J. and refused to return I.J. to the grandparents when confronted by police.

Given this conduct and history of domestic violence, the family case plan required the father to participate in a number of services intended to address the root cause of his behavior. Among these services, the father agreed to obtain a substance-abuse evaluation, follow the substance-abuse evaluation recommendations, participate in random drug testing, participate in counseling, obtain a psychological evaluation, and follow the psychological evaluation recommendations.

However, the father took steps to avoid complying with a number of these services. At the termination hearing, he claimed he completed a psychological evaluation but never received the results because the doctor moved to a new facility. Then he conceded he had not completed the evaluation. The father proclaims that he has no mental-health issues. But he is able to do so in part

because he never completed the required psychological evaluation, which would provide critical insight to his behavior and identify any mental-health issues.

He also avoided drug testing through a substance-abuse program by indicating that DHS was testing him. In doing so, he avoided the drug testing component of substance-abuse treatment. And he missed drug testing scheduled by DHS. We presume these missed drug tests would have resulted in positive tests. *See, e.g.*, *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017); *In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) ("She has missed several drug screens, which are thus presumed 'dirty,' i.e., they would have been positive for illegal substances."). A case worker also observed what appeared to be a marijuana stem in the toy room in the father's house during a recent visit.

Moreover, the father was inconsistent with visitation. He attended twenty-two of the fifty-nine visitations offered to him. He missed some visits because he had errands to run or was in jail. His participation in parenting classes, which immediately followed visitation, was also inconsistent. So the father failed to progress to unsupervised visits with the children. Without the necessary progression from supervised visits to unsupervised visits or trial home visits, "we cannot say the children could have returned to the [father]'s care." *See In re C.N.*, No. 19-1961, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5 2020).

Most troubling, the father continues to deny his issues with domestic violence. Yet during the pendency of this case, the father has perpetrated domestic violence. He threw a brick through the mother's car window—striking her in the face while the children were present. With respect to another instance,

the mother testified, "He pushed me into the wall and told me that he could hurt me very badly. He said that he would smash me between my bed and my wall." Later the same evening, he struck the mother in the face.

Following the mother's testimony at the termination hearing regarding past instances of domestic violence, the father exited the courtroom and then re-entered to exclaim, "It's a bunch of false testimony trying to be made here, lying on me."[3] The father's response and demeanor following the mother's testimony was concerning enough to prompt the juvenile court to issue a no-contact order protecting the mother. The father's denial of domestic violence in spite of evidence to the contrary presents a significant barrier to reunification. *See In re A.M.*, No. 19-1735, 2020 WL 825975, at *3 (Iowa Ct. App. Feb. 19, 2020) ("If a parent 'has gained very little insight' over the course of the proceedings about domestic violence and the danger it poses to the family, returning young children to that parent's care goes against their welfare." (quoting *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015))).

For these reasons, we find the first step in our review reveals the State established a ground for termination under section 232.116(1).

**B. Best Interests**

Next, we consider whether termination is in the children's best interests. In considering the best interests of the children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and

---

[3] The court found the father was not credible but found the mother's testimony to be credible. We defer to the juvenile court's credibility findings. *See M.W.*, 876 N.W.2d at 219 (noting we give weight to the juvenile court's credibility findings).

growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

We conclude termination is in the children's best interests. The children are in the care of the maternal grandparents who are willing to adopt them. *See* Iowa Code § 232.116(2)(b). This would provide them with safety and stability. Moreover, their older half-sibling is also in the grandparents' care. And termination would assist in keeping the children together. *See In re S.K.C.*, 435 N.W.2d 403 (Iowa Ct. App. 1988) (finding termination in the child's best interest because it allowed her to remain with her siblings).

Accordingly, on the second step of our review, we conclude termination is in the children's best interests. *See J.E.*, 723 N.W.2d at 802 (Cady, J., specially concurring) (noting the child's safety and need for permanency are the "defining elements" under the best-interest analysis).

### C. Exceptions to Termination

Finally we consider whether to apply section 232.116(3)(c) to preclude termination. "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. Even if the parent proves an exception, we are not required to apply the exception. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). We exercise our discretion, "based on the unique circumstances of each case and the best interests of the

child[ren]," to determine whether the parent-child relationships should be saved. *Id.* (citation omitted).

The father makes a passing reference to section 232.116(3)(c) to resist termination. Section 232.116(3)(c) permits the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." "[O]ur consideration must center on whether the child[ren] will be disadvantaged by termination." *D.W.*, 791 N.W.2d at 709. In this instance, we do not believe the bond between the father and the children is so strong that the children will be disadvantaged by termination. So we decline to apply this permissive exception.

## III. Conclusion

The juvenile court was correct in terminating the father's parental rights.

**AFFIRMED.**