# IN THE COURT OF APPEALS OF IOWA

No. 19-2108
Filed June 3, 2020

**IN THE INTEREST OF J.H.,**
**Minor Child,**

**C.M., Father,**
　　Petitioner-Appellee.

**S.H., Mother,**
　　Respondent-Appellant.

_____

　　Appeal from the Iowa District Court for Clayton County, Linnea M.N. Nicol,

District Associate Judge.


　　A mother appeals the termination of her parental rights to her minor child.

**AFFIRMED.**


　　Cory R. Gonzales, Strawberry Point, for appellant mother.

　　C.M., Waukon, self-represented appellee father.

　　David G. Baumgartner, Strawberry Point, attorney and guardian ad litem for

minor child.


　　Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**AHLERS, Judge.**

A mother appeals the termination of her parental rights to her minor child, J.H. She argues the juvenile court erred when it determined the father met his burden to prove she abandoned J.H. under Iowa Code section 600A.8(3) (2019) and found termination was in J.H.'s best interest. On our review, we affirm.

## I. Background

J.H. was born in 2005 and was fourteen years old at the time of the termination hearing. The mother was seventeen years old when J.H. was born. The mother and father have not been in a relationship or lived together since before J.H. was born. J.H. lived with the mother until she was one year old, at which time the mother gave guardianship of J.H. to J.H.'s maternal grandmother. J.H. resided with her maternal grandmother for approximately the next eleven years. During much of the period when J.H. lived with the maternal grandmother, the father exercised regular visitation. The time with the grandmother ended in February 2017, when it was discovered the grandmother was abusing prescription drugs. As a result, juvenile authorities removed J.H. from the grandmother's care and placed her with the father in Wisconsin. When J.H. went to live with the father, the mother could not take custody of J.H. because the mother had been charged with conspiracy to possess or manufacture methamphetamine and was still on probation related to that charge.

After J.H. had lived with her father for approximately one year, a decree was entered in a separate district court proceeding. The decree issued by the district court granted the mother and father joint legal custody of J.H. and placed J.H. in the physical care of the father, subject to the mother's visitation rights. A few

months later, in September 2018, the parties stipulated to modification of the decree based on the mother's continued use of illegal drugs and romantic association with men who were a threat to J.H. The modification eliminated scheduled visits for the mother and only allowed visitation "at the sole discretion of" the father. The stipulation was incorporated into a district court decree.

The father petitioned to terminate the mother's parental rights in this proceeding in July 2019, alleging in part that the mother had abandoned J.H. by failing to maintain contact with her. After the termination hearing, the juvenile court granted the petition and terminated the mother's parental rights. The mother appeals.

## II. Standard of Review

"Private termination proceedings under chapter 600A are reviewed de novo." *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Our primary consideration is the child's best interest. *Id.*; Iowa Code § 600A.1.

## III. Discussion

### a. Statutory Grounds

The mother first argues the father has not shown she abandoned J.H. under section 600A.8(b). Under that provision, "a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means." Iowa Code § 600A.8(3)(b). A parent can demonstrate substantial and continuous or repeated

contacts by "[v]isiting the child at least monthly when physically and financially able to do so" or through "[r]egular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child." *Id.* § 600A.8(3)(b)(1)–(2).

The mother argues the father has not shown she abandoned J.H. because, following the September 2018 order granting the father discretion over her visits with J.H., the father prevented her from seeing J.H. While the father did refuse to allow some visits to occur, the mother omits the father's expressed justification for refusing to allow the visits: the mother's refusal to promise her boyfriend, J.G., would not be present at the visits. After the district court entered the September 2018 order amending visitation, the father repeatedly requested assurance from the mother that J.G. would not be present for visits. The mother declined. While there is little evidence on the record about why J.G. is not an appropriate person for J.H. to be around, we note J.G. was named as a co-defendant alongside the mother in a different methamphetamine charge than the one discussed before.[1] Additionally, prior to the September order, the mother filed an application for contempt based on the father's alleged refusal to let J.H. visit the mother while J.G. was present. In its ruling on the contempt application, the district court hearing the application concluded the father "acted responsibly" by denying visitations with the mother when J.H. would be exposed to J.G. and the mother had "chosen [J.G.] over her child." Upon our de novo review of the record, the father has established that the mother failed to visit the child at least monthly when she was physically

---

[1] The second methamphetamine charge against the mother was dismissed.

and financially able to do so, and such lack of contact was not caused by the father preventing the contact.  *See* Iowa Code § 600A.8(3)(b)(1).

The mother also claims the father failed to prove she did not regularly communicate with J.H. or the father when physically and financially unable to visit. *See id.* § 600A.8(3)(b)(2).  However, the record establishes the mother made very little effort to communicate with J.H. when she was not physically seeing the child. *See In re G.A.*, 826 N.W.2d 125, 130 (Iowa 2012) ("Parental responsibility demands 'affirmative parenting to the extent it is practicable and feasible under the circumstances.'" (quoting *In re Goettsche*, 311 N.W.2d 104, 106 (Iowa 1981))). For the two-year period leading up to the termination hearing, the mother called J.H. only a handful of times.  The mother's communication with J.H. through letters and Facebook was also sporadic, sometimes sending messages back-and-forth multiple times a day and other times allowing months to go between messages. Based on our de novo review of the record, the father proved the mother failed to have regular communication with the child when the mother was not otherwise physically visiting her.

The mother's marginal efforts to keep in contact with and visit J.H. and her refusal to accommodate the father's understandable request to avoid exposing J.H. to J.G. shows the mother has not maintained "substantial and continuous or repeated contact with" J.H. under Iowa Code section 600A.8(3)(b).

The father has met his burden of establishing by clear and convincing evidence that the mother has abandoned the child as set forth in Iowa Code section 600A.8(3)(b).

### b. Best Interest

We next consider whether it is in J.H.'s best interests for the mother's parental right to be terminated. At this step of the analysis, we consider "whether a parent has affirmatively assumed the duties of a parent**."** Iowa Code § 600A.1(2). In making that determination, we consider, but are not limited to "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.* § 600A.1(2). It is the father's burden to prove termination is in J.H.'s best interest. *G.A.*, 826 N.W.2d at 131.

As discussed above, the mother has made minimal effort to visit J.H. and maintain a place of importance in J.H.'s life. Termination is J.H.'s preferred outcome,[2] and she and the mother do not appear to have a strong bond. During the termination hearing, the juvenile court engaged J.H. in a long colloquy. J.H. told the court she noticed the mother "never really paid attention to" her and that the father's spouse, her stepmother, was "more of a mom than [the mother] has ever been." J.H. further told the court she felt abandoned by the mother and wanted to take her father's last name. *See id.* (considering the lack of close relationship between the child and the parent whose rights were sought to be terminated in the best-interest analysis). In the termination order, the juvenile court noted that, while termination appears to have originally been the father and

---

[2] In addition to J.H. stating her preference for termination, the guardian ad litem appointed for J.H. participated in the hearing and recommended granting the requested termination.

stepmother's idea, termination "was the desire of [J.H.] throughout" the proceedings. Additionally, the stepmother testified that she would be willing to adopt J.H. if the mother's parental rights were terminated. *See id.* (considering the stepparent's willingness to adopt the child in the best-interest analysis).

On our de novo review, we conclude the father met his burden of establishing by clear and convincing evidence that termination of the mother's parental rights is in J.H.'s best interest.

**AFFIRMED.**